Pick up the last case set for oral argument today, People v. Torvald Stanley. Please proceed. Good afternoon. May it please the Court. Alexander Munches with the Office of the State Appellate Defender. I represent Mr. Torvald Stanley. It is undisputed that Mr. Stanley refused to talk. The police had accused him of two murders, one in East St. Louis and one in Williamson County. They believed he had used one gun in both crimes. In response to their accusations, Mr. Stanley invoked his right to silence. However, the police immediately and aggressively undermined his invocation. They told him silence would hurt him. Over a 20-hour period and throughout four different interrogations, they then extracted a confession from him. Although it was unsurprising that the trial court suppressed all statements he made in the first, second, and fourth interrogations, but the trial court erred by failing to suppress the third. As a preliminary matter, I just want to point out that the parties agree that Mr. Stanley unambiguously invoked his right to silence. Did what? Unambiguously invoked his right to silence. Thus, on appeal, this court should consider whether, under Mosley, the police's failure to scrupulously honor his right to silence forms suppression of the third interrogation. In doing so, this court should carefully consider the content of each interrogation. They reveal how six different officers from at least three different agencies worked in concert to make a man who refused to talk speak. They reveal the ongoing actual coercion of Mr. Stanley. Michigan v. Mosley sets out at least five factors this court should consider. No one factor is dispositive. Here, however, each factor weighs in favor of suppression. The first factor this court should consider is whether the police immediately ceased interrogation upon the indication of his right to silence. The answer is an emphatic no, but the important thing is what they did immediately after he invoked. Detective Orlando Ward advised Mr. Stanley that you don't get to see the evidence against you unless you talk. In particular, he said, you are done talking. You say you are done talking. If you are done talking, we won't be able to show you the tape. Now, if you want to see the tape, you still talk to us. Ostensibly, this tape depicted interviews with three people who had inculcated him for the murder in East St. Louis in Williamson County or both. An hour later, the officers still did not show Mr. Stanley his tape. So Mr. Stanley tried to broker a deal. He said, I know for sure I'm asking you to take a lie detector test. You all gave me some videos or something to prove that I was even there. I wasn't there. At that point, the detectives broke up the first interrogation, presumably to arrange the lie detector test. Leading that interrogation, Sergeant McAleenan, who was there with Detective Orlando Ward and Detective Foley, he called the Williamson County sheriffs. And he discussed his investigation, including that first interrogation with them. Thus, it was no surprise that the Williamson County sheriffs showed up the next day, immediately on the heels of the second interrogation. Nine minutes. Nine minutes. So the second interrogation begins with the lie detector test administered by Detective Bailey from an unidentified agency. Then Detective Orlando Ward and Sergeant McAleenan from the Illinois State Police interrogate Mr. Stanley. Nine minutes pass. Mr. Stanley is in the same room. The sheriffs from the Williamson County Sheriff's Department show up. That's Detective Stefan and Detective Raul. So nine minutes pass between the end of the second interrogation and the start of the third. So that is not a significant amount of time, as your Honor will recall from the briefing. The state decided no case for nine minutes being a significant amount of time. Accordingly, that second mostly factor also cuts in favor of suppression. Now third mostly factor, whether the subsequent interrogation was by different officers, the answer to that is nominally yes. Yes, the Williamson County Sheriff's Department is not the East Amos Police Department. It's not the Illinois State Police. But we know that Sergeant McAleenan called the Williamson County Sheriff's Department the previous night after the interrogation, discussed their investigations. So it was no surprise that the Williamson County Sheriff's Department was there immediately on the heels of those other officers. The fourth factor this Court should consider is whether the subsequent interrogation was restricted to a crime that had not been the subject of an earlier interrogation. Now mostly does not distinguish between primary, secondary, and tertiary subjects. Mostly asks a much simpler question. Did what the officers talked about in the third interrogation, did that come up in the first or second interrogation? And the answer is yes. In fact, the things they talked about came up a lot. For instance, all officers were searching for one gun. They believed one gun shot both victims. Thus, Ward, who reportedly was just discussing the East St. Louis murder as according to the State, asked Mr. Stanley, where is the gun from Carbondale? Carbondale is not in East St. Louis. Ward knew that one gun, or believed that one gun was used in both crimes. Similarly, Detective Stefan from the Williamson County Sheriff's Department said to Mr. Stanley, we took the projectile out of the victim's body, that is from Williamson County. They took the projectile out of the truck driver's body, that's from East St. Louis, and they could match those up. Had that already been done, the ballistics on that? You know, it's difficult to tell from the interrogation because the police are allowed to lie about certain facts, kind of bluster. Well, that's not, the question was, they had it been done, not who lied. No, I'm saying it's difficult to tell from the interrogation video. If we take Detective Stefan and his word, then that test had not been done yet. They said that, you know, we can match these up. And so when Mr. Stanley asserted, you know, that's not even the same type of gun, Detective Stefan said, yeah, it is the same type of gun. That seems to imply that they had done it. So it's difficult to tell from just Stefan's words alone. Similarly, it's also unsurprising that the state's own brief contains a litany of pinned citations about the first three detectives, or first four detectives, that's Ward, Foley, McAleenan, and Bailey, asking Mr. Stanley questions about the Williamson County murder. For example, McAleenan tells Mr. Stanley during the second interrogation, Last night on my way home, I finally talked to the detective from Williamson County and the interviewee, that's from the tape, that Thomas tape that had never been shown. That person's story matched up with exactly what the detective had on the Williamson County deal, which means the interviewee was being honest. So clearly, you know, this fourth factor, did the subject come up in the first two interrogations that was talked about in the third interrogation? That's an emphatic yes as well. Finally, the fifth factor this court should consider is whether or not fresh and random words were given. And the answer is yes, but again, context is critical. There's a steady stream of interrogation about both murders and one gun in the same room. Nine minutes go by, the Williamson County Sheriff show up. Now under well-settled Illinois law, knowledge of his previous indication is imputed to those Williamson County officers. Nonetheless, those officers didn't ask Mr. Stanley whether or not he had invoked at any previous moment. The appellate court disfavors that, that's under People v. Savory. Also important is that how did Ward explain the right to silence to Mr. Stanley? Mr. Stanley unambiguously invoked. Parties agree about that. Mr. Detective Ward told him silence would hurt him. Said, you will not be allowed to see the evidence against you. Can't defend yourself unless you speak. So that's Mr. Stanley's functioning, working knowledge of the right to silence. And that's what he knows when the Williamson County Sheriff show up nine minutes after those other three interrogators leave and start asking him questions about the same subject he's been talking about for the last 15 hours. So in sum, each factor under Mosley weighs in favor of suppression. I appeal this court to take note of the ongoing actual coercion Mr. Stanley suffered in the course of four interrogations. Under the totality of circumstances, third interrogation was an illegal product of the first and second. Accordingly, this court should reverse the norm and suppress the third interrogation. Thank you. Thank you, counsel. Thank you. Argument on behalf of the state. May it please the court. Counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. This case is a fairly straightforward application of the factors as set forth by the United States Supreme Court in Michigan v. Mosley. Just as my opponent did, I'm going to go through those factors, but probably draw a little bit different conclusions. The defendant is correct that the defendant didn't invoke his right to remain silent, and the East St. Louis police officers didn't honor it. But that's just one factor, and I think we need to look at this very briefly on that examination. First of all, this is total length of that first investigation – I mean interview was one hour. They took a ten-minute break in the middle of that to allow the defendant to take a smoke break, and obviously he was offered food, he was offered a drink. This is not a coercive, much as the defendant argued in his reply brief, this is not a coercive interview. Yes, they did say it. You can't see the video if you're not going to talk to us, but everything else is not in any way coercive. Second of all, I'd note that the Illinois Supreme Court in People v. Brownell said, well, yes, this first interview is stricken because you did not honor his request to remain silent. But it then went on to say that an admission made 36 hours later after that did not violate the defendant's right to remain silent. So the fact that you don't honor this request to remain silent and keep on questioning the defendant does not mean all by itself that everything that follows flows through to these other interviews. And that's kind of the basis of the defendant's argument, is that because they didn't honor that request to remain silent that it just kept going. Before moving over to the next factor, I would note in People v. Coley, the appellate court says that the fact that an earlier statement is inadmissible does not necessarily make a subsequent statement inadmissible. The time, the time is very critical here because it depends on what you're talking about. Are you talking about the time from the time the first interview ended, or are you talking about the time when the second interview ended? The time between the second interview and the second interview being a new St. Louis interview. The third interview is the Williamson County. That's the only one that's at issue here is the Williamson County interview. The defendant says that an improper East St. Louis interview ended six minutes before the Williamson County interview. It's the state's position that that second interview was in no way improper. Now, there is an allegation in the reply brief that the state waived this argument. That's simply not true. The trial court's order said that the state concedes an oral argument that the statements made by the defendant in the second interviews might be admissible. And if you look at the transcript of that interview, there's certainly no concession by the state that the second interview by the East St. Louis officers was improper. And in any case, this court can affirm on any basis supported by the record. So I think it's very important to consider whether this second interview was improper. And what was the time between the end of the first interview and the end of the Williamson County interview? Twelve. Twelve hours. Yes. Big difference. The second interview took place the next day. We have the first East St. Louis interview. Then we have the next day, the second East St. Louis interview, which was at the very specific request of the defendant. He said, I want to do this. And he never requested, he made any request to remain silent. So I don't think this six-minute difference between the end of that and the Williamson County interview is the time frame. The time frame is the first one and the Williamson County one. The third mostly factors fresh Miranda warnings. There was a Miranda warning at the first interview. There was a Miranda warning at the second interview. There was a Miranda warning at the third interview. This is the Williamson County interview. There was actually a fourth interview. There was a Miranda warning there. So the Williamson County police officers absolutely positively gave the defendant fresh Miranda warnings before they spoke to him. Defendant says in the reply brief that the state is wrong to assert that giving fresh Miranda warnings is a crucial factor. He goes on to say that whatever the state means by crucial is not shared by the Ninth Circuit, then citing to Sue and Heldt. Well, let me quote what Sue says. The most important factor, or as Judge Fletcher stated, the crucial factor is the provision of fresh Miranda rights. People Heldt versus Heldt says the crucial factor in our view is the provision of a fresh set of warnings after the invocation of Miranda rights. So what the state means by the word crucial is what Sue meant by the word crucial and what Heldt meant by the word crucial, the most important one. The fact that they also take note of the other factors, well, of course they take note of the other factors. But nonetheless, there were fresh Miranda rights. Now, defendant also claims that the Miranda warnings that the Williamson County officers gave the defendant were not fresh because they were the same warnings given by the East St. Louis officers. Well, there's only one set of Miranda warnings. You don't say, oh, okay, you had these given twice before, so we're going to reword it for you so it will be fresh. Miranda is Miranda. And fresh means you give the warnings again, not that you need to in some way say it differently. Defendant also intimates that the Williamson County police officer somehow knew about the defendant's invocation of his right to remain silent. And he bases that on the fact that the East St. Louis officer called Williamson County after the first interview. But what are we to presume from that? Are we to presume that the East St. Louis officer called Williamson County and said, yes, we have this guy, and he invoked his right to remain silent. But we didn't hear about that, and so you guys don't have to either. I mean, here's what he did. As far as what is truly reflected in the record, here's what he did. A female friend, although apparently not a girlfriend of the defendant, said that apparently had told the East St. Louis police officers something about the East St. Louis murder. And she also apparently told the East St. Louis police officers for the first time about the Williamson County murder. So at least it is my rating of the record that he called and asked the police officers about the Williamson County murder. And then that officer came back to the defendant the second day, not the first day when there was anything wrong, but the second day, and said, well, I checked with Williamson County. And what that girl told us about Williamson County was correct, because the defendant admitted that he talked to her about Williamson County. In fact, he volunteered that. He said, I told her about what happened in Williamson County. I didn't tell her anything about East St. Louis. Police officer calls Williamson County, and he tells the defendant the next day, I called Williamson County, and what she said about what happened in Williamson County was correct. So since she didn't lie then, I can assume she didn't lie now. That's not a discussion of what happened in Williamson County. That is simply confirming a fact that was given by another officer, I mean, a witness. Finally, these are cases that are entirely different crimes. One's a felony murder in Heron. One's a murder in East St. Louis. We have East St. Louis officers. We have Williamson County officers. And we have no interaction, I think, with CLA. No true interaction as far as these are the officers combining the cases. Thank you, Counselor. Rebuttal argument? Three quick points in response to the state's argument. The first is, as I stressed in the reply brief when the state has omitted again an oral argument, the request for the lie detector test came at the end, in the midst of this violation of the right to silence during that first interrogation. It didn't happen the second day. It's at the end of the conceitedly bad first interrogation. As a fact, on the record, when you watch the video, you will see that the request for that lie detector test came at the end of the first interrogation. And that's critical. That's why you measure the time between the end of the second interrogation and the start of the third. Nine minutes, not 12 plus hours. So I just need to stress that. Also, the state has not in any way responded to the forfeiture argument in the reply brief on suppressing the second interrogation. So we stand by that in the reply brief. The second point regarding the fresh Miranda warnings, the state had no real response to the imputation point. So as a matter of law, not- Say that again. Oh, sorry. That Mr. Stanley had invoked his right to silence. Knowledge of that invocation is imputed to the Williamson County Sheriff's Department as a matter of law. The site is People v. White, 61 Little Second, 288, and site 294, a 1975 case. As a matter of law, that invocation knowledge of it was imputed to the Williamson County Sheriff's Department. Under People v. Savory, the public looks unfavorably upon officers who have knowledge of an invocation and who give Miranda warnings without asking about the previous invocation. So the state's argument is not responsive to those points. Finally, the state's last point about whether or not the first two interrogations discussed the Williamson County murder. Just, you know, go back to basics. Remind this court about what is an interrogation. It's any statement that's likely to elicit an incriminating response, either inculpatory or exculpatory. Sergeant McElhaney telling Mr. Stanley, I talked to this witness, she makes you good for this murder. I talked to the sheriff, he thinks you did it, I must mean that they're both right. That is an interrogation. That's just black letter law. So with those three points, especially stressing the fact that the request for the lie detector test came at the end of the first interrogation, I'll leave it open to you guys if you have any other questions. No, thank you. Thank you. Thank you, counsel. Court will take this case under advisement and we'll issue a ruling in due course. And we'll be in recess for the day. All rise.